Derbigny, J.
delivered the opinion of the court. In the discussion of their respective means of defence, the parties have taken a most extensive range. But although due attention has been paid to their arguments, .we find not necessity, for the decision of this cause, to inquire into any other points than the -following;
1. As an action inofficiosi testamenti, is- thi& *402 claim barred by the silence of the plaintiffs during five years?
8. Is the defendant’s title one on which pre-scriptión could run ?
I. Heirs iu the direct,descending or ascending, line, may be disinherited for cause assigned ; collaterals with or without cause. No distinction is made in the Spanish laws, between the express disinherison of the heir at law and the mere omission of his name in the will; both are called disinherison : un hermano puede des* heredar al otro con razón é sin razón. Part. 6, 7, IS. Against the disinherison, the heir at law may claim within five years, after the instituted heir has taken possession of the estate : past that time he cannot. Part. 6, 8,4. Is this law applicable to the present action ? An attentive perusal has convinced us that it is.
The law begins by saying that there are many reasons for which the disinherison cannot be removed : “ as when the heir instituted proves that the heir at law was really guilty of the act for which he is declared to be disinherited ; and this takes place whether the heir at law be a descendant, an ascendant, or a collateral.” So much of the law is, of course, applicable only to cases where the disinherison is for cause assigned. But what follows is uncou *403 netted with the preceding part: “ We more* * . over say that if a person, who has been disin-lierited, remains silent and does not co nplain 7 for five years after the instituted heir has taken possession of the inheritance, he shall not thereafter be heard, though he should offer to shew Why he ought not to have been disinherited.” This provision is a general one ; we cannot undertake to say that it was intended to apply only to cases of disinherison for cause assigned. The plaintiffs, however, contend that the case of disinherison without cause is not comprehended within the purview of this law. Let us see if any good reason may be found in favor of that interpretation. Disinherison, without cause assigned, can take place ynly against collaterals ; and the law gives them no relief against it, except in one case, and that is, where the instituted heir is infamous, and the heir at law- a brother of the testator. We do not mean here to examine whether the defendant be one of those persons whom the Spanish laws deem infamous ; but taking it for granted, we say that to support the construction of the above law as, insisted on by the plaintiffs, the institution of the infamous person should be absolutely void ; for then, no application being necessary on the part oF the heir at law to have it avoided- no *404 laps?, of time would be fatal during which he might neglect to bring suit against the instituted heir. But the institution of an infamous person as heir is not absolutely void, it is only voidable : el hermano puede quebrantar el testa-mento, probando esto ante el judgador ; “ the brother raav have the will annulled, on proving the fact before the judge and in law S, tit. 8, seyendo el heredero tal como sobreiictoes, estonce bien podría el hermano querellarse ante el juez, é quebrantar el testamento en que fuesse estab-lecido por heredero, i( The heir being such as is abovesaid (infamous) the brother may bring bis complaint before the judge, and cause the will to be annulled, in which such iseir is instituted.” Finally, it is qprtain that the infamous character of the instituted heir does not make the institution absolutely void, that the disinherited brotner cannot even complain of it, if he is himself guilty of any act against the testator, by which disinherison is incurred : Pern si este hermano s'obradicho hubiesse fecho contra el testador alguna de las cosas porque los her-manos pueden ser deseredudos, según diximos en el titulo de los deseredamientos, estonce non se podría querellar, sin desatar el testamento del harmano. The defendant, therefore, if the ptaintiffs bad brought their action against her *405 w'thin the five years, might have repelled it, by proving that the plaintiffs were guilty of some one of those acts : and if she had succeeded, she would have had judgment in her favour What then, if they said nothing during five years? Why, the will must remain valid in the same manner as a disinherison, for cause assigned will be maintained, if not attacked within that time.
But the plaintiffs say that, supposing their action inojjiciosi testamenti to be barred according to the above quoted law of the Partidas, that provision is repealed by the law 6, tit. 15, book 4, of the Recopilación de Castilla, which fixes general rules for all kinds of prescriptions of actions. It is a principle well known, and which this court has recognized on several occasions, that general provisions do not repeal special laws, when these may subsist without clashing with them. We think that the prescription of five years established by the law 4, tit. 8, part @, against the action inojjiciosi testamenti is'not repealed by the law 6, tit. 15, book 4, of the Re-copilación, which provides generally, that personal actions shall be prescribed by^ twenty years, and actions real or mixed by thirty.
It is too late, then, for the plaintiffs to avail themselves of the action of inofficious testament 5 *406 let us see whether they can succeed on the other J _ ground, the nullity of the will on account of the omission of some solemnity required by law.
II. For the decision of this point, attention must be had to the present situation of the parties. The defendant was in possession of the late Joseph Carrel’s estate since more than ten years, when the present suit was brought. The will was her title, and under it she may have prescribed, provided that title was a just one aud she a possessor in good faith, for all the distinctions resorted to by the plaintiffs upon that point, will, on examination, be found to centre in that “a just title and good faith.”
Much labour, in the opinion of this cour''» has been wasted in proving tiiat this will was not, in reality, such, as it appeared to be on the face of it; that an instrument outwardly perfect in its form, had, in fact, not been executed as it purported to have been. When the law says that a title defective in point of form shall not be the basis of prescription, what does it mean ? A title, which, though apparently good, has some latent defect ? Certainly not. A title, which, though apparently clothed with all the formalities required by law, may be proved defective by extensive evidence? No. It means *407 a title, on the face of which the defect is stamped. And why? Because the holder of such a title cannot pretend that he possesses in good faitli; for he is supposed to know the defect of form which his title shews, and cannot plead ignorance of law. But admit latent nullities, unknown in point of fact to the possessor, to prevent prescription, and what does good faith avail him ? Or rather what becomes of the Whole doctrine of prescription ?
But if the ignorance or the misconduct of the notary, from which it results that this will Was in reality null, protects the defendant, the plaintiffs say that it is not so with respect to a defect which she must have known, to wit, her own incapacity to inherit from Joseph Carrel. It, is true, that, if the latent defect is known to the possessor, he cannot prescribe : why? Again, because he does Pot possess in good faith. I #may contract with a madman, believing him to be of sound mind, and prescribe under such a title, notwithstanding its absolute nullity: si a jurioso quern putem sanee mentis entero, con-stitit usucapere utilitatis causa me posse, quam* vis nulla est emptio. fl. 2. § 16. ff. pro empt.J But if I knew him to be mad, I cannot prescribe under pretence that I was ignorant of his incapacity to contract. So here, the defendant wag *408 the concubine of the late Joseph Carrel; if the law had provided that the institution of sue a person as heir was absolutely void, she could ... rot plead ignorance of her incapacity to inherit. But the law, as we have seen, is very different. Far from making the institution void, it has made it only voidable, at the suit of the brother, and by him only in certain cases; and it bat provided that if the disinherited brother remains silent five years, he shall not thereafter be heard. The defendant was capable of inheriting : her title was good, provided the plaintiffs acquiesced in it by their silence. At the end of five years, she could prescribe under a will in every respect valid : at the end of ten, she has prescribed under a will apparently perfect in point of form. The objection of the plaintiffs to this will as a just title, on which prescription would run, does not appear to us of sufficient weight to require any particular consideration.
It is, therefore, ordered, adjudged and decreed that the judgment of the district court he anulled, avoided and reversed, and that judgment be entered for the appellant with costs.